May it please the Court, I'm Jeffrey Ehrlich on behalf of the Plaintiff and Appellant. There's a bit of a disconnect between the basis for the District Court's order dismissing the case and Blue Shield's defense of that order, and so I'm going to first try to address the District Court's reasons and then move to Blue Shield's alternative basis for affirmance. The District Court found and dismissed the case finding that Mr. Gomez lacked standing to pursue this claim and began with the finding that there was no injury in fact alleged, and we think that was obviously an error. Mr. Gomez wasn't insured under the MedPay coverage, and the District Court's adopted or appears to have adopted Blue Shield's suggestion that because he was an occupant of the vehicle, he was a driver of the vehicle, then he wasn't covered because he was not qualified as an occupant, and I just don't think that's a credible reading of the policy, and neither did the insurance company since they paid the MedPay claim, I think that's... I take it that the name Flor de Lisa La Puce is the name of the owner of the car, is that correct? I believe so. It's in the materials, but I didn't see it connected up anyway. This person is not a party to this litigation. Not at all. But it's her insurance policy we're talking about. Yes, but Mr. Gomez is a third-party beneficiary of the MedPay coverage and has a right to enforce his right under the policy, under the... Mr. Gomez was driving? With permission. He was a permissive user and was driving. But is the issue whether or not the insured or whoever the covered person is, in this case your client, is the issue that he is entitled to reimbursement of any of his medical expenses as a result? Maybe I'm not making my question very clear. The concern I think Judge Pregerson had was that it looked to be a windfall to your client. His medical care was covered under the various insurance policies. The question is whether or not he gets to keep the windfall. Yes, and I can't deny I think this case is almost about dueling windfalls. As we've explained in the opening brief, this windfall, if you will, or the allowance of double recovery is common in MedPay coverage. Part of that is a reflection of the fact that MedPay generally has very low limits and that carriers are in a position, if they want to limit the windfall, to use another insurance clause to say that there will be no MedPay payment if somebody else steps forward or if there's other insurance. There was, in fact, an other insurance clause in this policy, but it only applied to other automobile MedPay coverage. The carrier could have elected to say if you have prepaid health insurance and there's a reimbursement, we don't have to pay, but the policy doesn't say that. There's no public policy that suggests that there's no right to this double recovery. That just is a fact of how MedPay coverage works. So because of the contract language, Mr. Gomez did have a right in our position. Okay, a right, but was he injured? I think that's what Judge Pregerson was focusing upon. The fact that what you really have, I guess, is a conversion claim. Yes. But I don't know that you pled one. Well, I mean, it's a conversion. Again, this gets in sort of the technical niceties. The district court said that Blue Shield doesn't really have your MedPay benefits. It's the provider that has the MedPay benefits. And our position is, well, Blue Shield tells the provider to double bill. Send a higher bill at your retail rate to the MedPay, collect that. Bill us at your contracted rate, collect that. And then, if you're paid twice, offer to reimburse us, which they did. But why should your client care about any of that? What standing, maybe this is the problem. Right. Why does he have a right to go behind what Blue Shield does with the hospital? He has a right to do so because the reason, by virtue of the fact of what Blue Shield does and what it instructs its provider to do, Blue Shield is, in effect, taking the MedPay benefit that he would otherwise be entitled to and using it to pay itself to provide the care that it is obligated to pay under its policy. But he got everything he was entitled to under one policy or the other. Why should he have a right to a double recovery? Maybe a better way to put this is that if Mr. Gomez had settled with a tortfeasor in the accident, his policy with Blue Shield has a reimbursement provision that allows it to require him to repay it, once he's been made whole, to reimburse it for the monies that it's paid. But here it has no right. In fact, the California Code of Regulations specifically say that a health insurer cannot coordinate benefits with MedPay. It's not permitted. And, in effect, Blue Shield is indirectly attempting to coordinate benefits. The case ends up and postured exactly as if there was a coordination of benefits provision in the Blue Shield policy that said, if you have MedPay coverage, we are secondary. Your MedPay becomes primary. We coordinate with your MedPay coverage. That depends on how you define a windfall. And I use the term. I won't hold you to it, even though I think you essentially conceded that that's what it is. But if it's a windfall, it's not something that he's otherwise entitled to. It's something that he gets by virtue of the fact that it was offered to him. But his right here was to be reimbursed for any out-of-pocket or other medical expenses, and those were paid by the other insurer. So I'm having a hard time understanding how he's been injured, other than the fact that he didn't get the windfall. Well, maybe the problem is, as you define it, the word windfall. He's an insured under both the Blue Shield policy and... And there's no question that he got the coverage that the insurance policy promised. That's correct. What he's saying is, I want more, even though I'm not out any money. I respectfully would characterize it as he's saying, I am an insured under two policies. I'm insured under the Blue Shield policy. I'm insured under the farmer's MedPay coverage. Well, maybe he's a beneficiary under the MedPay, in the sense that he was driving a car, with permission, of the owner who happened to have automobile coverage with a MedPay provision. So as you suggest, he's a third-party beneficiary. He's not suing under his policy. He is suing as a beneficiary under somebody else's policy. That is correct. But under the policy language, he is an insured person. The reason he has the right is the actual language of the MedPay policy makes him, defines him as an insured person, with a right to pursue those benefits. If they did not pay him, he would have the right to sue. But the only benefit that he had a right to receive was to have his medical expenses covered, and they were covered. By his health insurance. Right. So why does he have another entitlement, in essence, to more money than what the insurance policies promise? The insurance policy contains no mechanism. It is drafted in a way that allows him to recover the cost of the health insurance, the price of the health insurance. The health care provided. Yes. Whether or not he has health insurance. But the health care that he was provided was covered. When you say covered, maybe I'm not understanding. It was paid. By Blue Shield. Your Honor, if his father had paid it, or a friend had paid it, it wouldn't matter. For the purposes of the right to be able to recover the MedPay, he would still have a right under the policy. The definition of what right he has under MedPay is defined by the MedPay provision itself. And the MedPay carrier did not carve out an exception. It could have. But it didn't carve out an exception for when a person who's an insured person under the policy has medical insurance. It seems to me, Mr. Elric, that what the plaintiff is really contending is that farmers paid the wrong person. Because if farmers hadn't paid anybody, then he, as the insured, would have had the right to go against farmers and get farmers to pay him. But instead, farmers paid the health care provider, the hospital. Yes. So what he's upset about is that they, and when they did that, then they say, we've done whatever our policy provided. We've paid the medical expenses. You've got no claims against us. Whereas if they had not paid the hospital, he could have got paid by them. Well. But the insurance company, but if Ben Pragerson says, Judge Pragerson says, if he's got a gripe, he's got his gripe with farmers. If he's got the wrong person, he ought to sue farmers. But I have to think that Judge Pragerson really didn't get that part correct. Because farmers got a bill from the hospital and it paid it. It didn't do anything wrong. Apparently, under the policy, that was okay for it to do, to pay the provider. Right. The problem, as we see it, is that Blue Shield tells the provider, bill our members MedPay and make that primary. And then if you can collect that money, give us back what we pay you under our policy for the insurance. And the net result is that the MedPay picks up the cost of the insurance. Blue Shield is refunded. It doesn't have to pay anything for the medical care that it's statutorily obligated, contractually obligated to provide. And the insured under the MedPay provision, who has a contractual right to receive that MedPay, doesn't get to have it. Because Blue Shield has the money. The money goes to Blue Shield, not to Mr. Gomez. And under the MedPay policy, and under the California provisions that forbid a health insurance company from coordinating benefits with MedPay, that's not permissible. But this just sounds to me like a conversion claim. Farmers or whoever it was paid the wrong entity. They gave the money to the hospital. And if he's got a claim at all, it's a conversion claim. Well, I guess when I agree that it was a conversion claim, I think our view is that the conversion occurs because the health insurer is directing its agent, the hospital, in its billing manual, to reach out and try to take this MedPay money. And then give it back to us as a reimbursement. So it ends up in Blue Shield's pocket. It is exactly the same, ultimately, as if there was a coordination of benefits. So the claim is against the hospital, then? Well, but the hospital, I think there might be a claim against the hospital. But we've alleged that the reason the hospital does what it does is because Blue Shield's billing manual instructs it, as a Blue Shield provider, to do this. But I'm not sure that's a claim under the policy by the insured. Counsel, can I raise two technical questions? First, what is the jurisdiction in this case, basis for jurisdiction? In the district court? Yes. The case was removed originally on ERISA preemption. All right. So this is an ERISA case. In other words, you're here because there is ERISA jurisdiction. I apologize for not giving you a direct yes or no answer. I think it's yes, but we – the case was originally removed, we believe, based on the defendant's arguments, that it was ERISA preempted. And we amended to cite an ERISA claim. Then there was further meet and confer, and the McDowell decision was brought to our attention. And when we analyzed the case, what we came to believe is that under McDowell, this is not really an ERISA case at all. So in the final operative pleading, we pleaded a claim under California's unfair competition law as our principal claim, and we added, in addition, a claim for ERISA under Section 502A3. But we tried to plead that conditionally because our belief is that it's really not an ERISA claim. In other words, we don't really believe that this case belongs in the federal system. That's what troubles me. Right. We believe that the case is not preempted by ERISA, that it states a claim under the unfair competition law, and the case should ultimately be remanded back to the superior court. Did you move to remand? No, because when it was originally removed, we first saw the case as ERISA preempted, and we thought we were going to proceed under ERISA. And it was only in another iteration, after we substituted some plaintiffs and dismissed some of the other defendants, that it crystallized that under McDowell, this really isn't an ERISA case. Well, what bothers me is that if you're here under an ERISA basis of jurisdiction, you have to state an ERISA claim, and that's all we can look at. We can't look at this other state claim that you have unless there is a primary basis for federal jurisdiction, which we're pursuing. And here the parties disagree. They think our claim is ERISA preempted, and it's an ERISA claim. There's a dispute about whether it's a claim for benefits or whether it would be a claim for other equitable relief. And so under their view, there is federal jurisdiction, and the court would have supplemental jurisdiction of the UCL claim, which would be preempted. But if I'm right, and it's really just a garden variety conversion claim, we don't have jurisdiction in federal court over that claim, do we? If that claim is not ERISA preempted, no. It was a bit of an interesting jurisdictional issue for us, and that's why the complaint went through more iterations than it normally would. But ultimately, I guess that brings me to, I mean, obviously in the tenor of the argument, it sounds like I've struggled to find the right way to explain why we think we have a claim and why we have standing. Well, state your ERISA claim in its strongest possible light. All right. With the understanding that we don't really believe that there's a claim. Only lawyers and judges could love this argument. I think, I feel like I'm making the defense argument, but if there wasn't an ERISA claim to be made, first of all, under McDowell, I don't think there is one. But the defense would say that this case is different than McDowell, because McDowell is a claim by the health plan, and this is a claim against the health plan. And if you look at the Third Circuit and the Fifth Circuit decisions in Urana and Levine, those courts have said that when there's a conditional question about reimbursement for benefits, that really does keep the benefits under a cloud, and therefore that is a claim that arises under ERISA and is subject to ERISA. We don't believe that's consistent with McDowell, and since we're here in the Ninth Circuit, we think that McDowell is really the defining case. And under McDowell, the court said in the reimbursement context, that if your claim doesn't really affect the amount of benefits, any provisions of the plan, it's just a claim to get a certain amount of money, it doesn't relate to an ERISA plan. As you can show some sort of a breach of an equitable duty, you're stuck. We don't see it as an ERISA case. But I guess what frightens me now in this discussion is that if we get remanded and we sue again, then we can sue under the unfair competition law. I suppose my concern is that we'd get in this endless loop of we'd be removed and then remanded again. But I suppose that if you remand because there's no ERISA jurisdiction, then we don't have to worry about that. We're going to see you again. Right. And then it becomes an issue for whether there's a UCL claim under the state court. And we've brought similar cases in state court and moved forward, and ultimately that case resolved against Kaiser. So that's a happy outcome. Counsel, you're down to about two and a half minutes. I'll save the rest of the thing. We'll hear from California Physicians. Good morning, Your Honor. May it please the Court, Duane Lyons on behalf of Blue Shield. Lyons. Your Honor, two points I'd like to start with. First, we do believe that this is a case where the court has ERISA jurisdiction. The issue is fairly straightforward. Blue Shield provided benefits under an ERISA plan. The first amended complaint identified this as an ERISA plan. Subsequent to filing the first amended complaint, the plaintiff attempted to plead a conditional case where he wanted to pursue both a claim under the California unfair competition law and perhaps an ERISA plan, and I don't think you're entitled to do that. But the fact that this is an ERISA plan is fairly clear. There's no question that it's a plan, but based on our discussion with your opponent, I'm not sure that it's a claim under the plan. I think it may be a claim under a different theory, which is a state law theory. Well, to the extent that the plaintiff seeks to have a California state law impact the administration of the plan, whether benefits are paid, and certainly he is claiming that he's entitled to benefits. The question is the benefits were paid. That's what's troubling me. It doesn't really have anything to do with a defalcation by either of the insurers in the payments that they were obligated to make under the plan. It has everything to do with who got the money and whether it should have gone to Mr. Gomez. Well, his rights as a member of an ERISA plan are prescribed by ERISA. He has very limited rights. There are very limited judicial review of the decision that's made by the plan beneficiaries. And so the California law that he's seeking to claim that we violated is something that once we're in federal court, the court resolves the entirety of that claim and prohibits it. But the case law is very clear that it must be an ERISA-related claim, right? And here his claim seeks to impose a California statute that says that the health care provider must provide emergency benefit services and cannot coordinate benefits. I think his claim was that we have somehow run afoul of that law by attempting to coordinate benefits. If that is his claim as he's articulated it, then Shaw v. Delta Airlines makes it very clear that if you have a state law claim that attempts to affect a relation or is somehow connected to an ERISA plan, that is a claim under ERISA. He's got a claim for benefits. His claim for benefits is that I'm entitled to get reimbursed. I'm entitled to get the money back that farmers paid. But he got reimbursed for the medical care that was provided to him. He's not asking for reimbursement of any additional out-of-pocket costs that were not otherwise covered under either plan. He's asking to receive a windfall, a double payment for expenses that he's not out. Well, I agree that he is seeking to recover a windfall. I think the first question is with regard to the claim that he's bringing against Blue Shield, which is the only entity that he's bringing a claim against. He's not bringing a claim against the hospital. He's not bringing a claim against the provider. The question is, does he have the ability to go into state court in a case where we have paid the benefits under an ERISA plan and to seek to hold us in violation of the state law when our duty to him arises solely as a result of his participation in the plan? That is what he's attempting to do. He's attempting to get extra benefits by virtue of applying a state law, which the only reason that he's able to claim protection under the state law is because he's seeking to recover benefits. You make a good argument that there's ERISA jurisdiction, but is it exclusive ERISA jurisdiction? He's got a claim for benefits. His claim is, I want – I don't understand why he can't sue in state court directly, regardless of ERISA. Well, he cannot sue Blue Shield in state court because our duties to him are prescribed by ERISA. He has no other ability to pursue a claim against Blue Shield. But ERISA doesn't reach benefits, does it? It reaches the equitable duty. Well, I think you're talking about the Providence case there, and the Providence case makes very clear that it's very limited to a situation where there was a contractual agreement between the provider – excuse me, the plan fiduciaries and the beneficiary. There was a side deal that allowed the plan fiduciary to recover separately against the beneficiary. And the dissent in Providence makes very clear that it's not a two-way street. A beneficiary has one claim against the provider – excuse me, the plan. It is an ERISA claim in federal court. If I look at my Blue Cross plan and I get a bill from the doctor that is $100, Blue Cross says we're only going to pay $50, you're stuck with the remaining $50, and I say no, the plan says that you're supposed to pay 100%. I have to bring that case in federal court? I can't go after Blue Shield in the state court? That is correct, and the review is very limited to what happens when we have an ERISA plan. Okay, but to me that is a perfect example of a claim for benefits that are due under the plan. I claim I'm entitled to $100, but they're only paying $50, and I want the other $50. That's not the situation we have here. The full benefit afforded by the plan was paid here. There's no question about that. That is correct. What this claim is is that there was additional money that got paid by the other plan, and I'm entitled to it. Somebody else took it, and they can't keep it. That's a conversion claim. That's not an ERISA claim. It's a conversion claim against perhaps farmers or the hospital, but it's not a conversion claim against Blue Shield. So why don't you like my theory? I like your theory to the extent that we can be brought back into state court, but I think he does have a claim against farmers who is conspicuously absent from this case. He doesn't have a case. So we dismiss the federal case because there is no ERISA jurisdiction here. We direct the district court to remand it to L.A. Superior Court, and you guys duke out the conversion claim in Superior Court. I think there is ERISA jurisdiction to the extent that our rights are impacted, and that's the case that's before the court right now is his claim against us. If you were to look at your right to keep the money that he says was wrongfully converted, but that's not an ERISA claim. Any claim that he has against us for our administration of his claim is subject to ERISA. I think that's too broad a reading. You're basically saying because Blue Cross issues insurance benefits that are covered under ERISA, that any time Blue Cross is sued for anything having to do with its insurance services, there must be federal jurisdiction under ERISA. I don't think the law is that broad. I don't think I'm making it that broadly. I'm making it that broadly with regard to this particular plaintiff. Certainly there could be a case between farmers and Blue Shield that's not an ERISA case. That might be a straight contractual claim, but as it relates to this plaintiff who is a planned participant, his only claim against us is for benefits or some other relief. He's got a claim for benefits because he's asking, and what he's complaining about is that we have his money and that we did not follow the state law rule that prohibits coordination of benefits. Okay, now let's take it to the next level. You're so anxious to get yourself into federal court under ERISA because you suggest that this is strictly a garden variety ERISA claim for benefits under an ERISA plan. Why shouldn't you be liable then? Well, first of all, to the extent that he's got an ERISA claim, he has to exhaust his administrative remedies, which he has not pled that he has done that, and he has not alleged. What should he have done that he didn't do? If he had any objection to the way this had been addressed, he should have followed the procedures. I'm not familiar with the specificities of what his plan provides as to how he seeks review, but the plan does provide review for a claim and how it is handled. His complaint is not that we didn't pay the claim. We paid the claim. His complaint is that someone else, farmers, should not have paid the claim. So your defense, you're here under ERISA jurisdiction, but your defense on the merits is lack of exhaustion, failure to exhaust. Lack of exhaustion, or alternatively, he's not been injured because we've already done everything we were supposed to do. His claim is not, and he hasn't alleged at all, that we had an obligation to pay him directly. He has not said that we have an obligation to pay him the total dollar amount of the money that the hospital billed. If he had made that claim, we would address that. But that is not his claim. His claim is that some other entity paid the hospital, and the hospital chose to take the money from the other entity and not Blue Shield. And his rationale for that is he says that we tell the hospitals that they should get money from the MedPay provider first. I still don't understand why that isn't just a plain old garden variety state law claim. Well, it's a state law claim against those entities, but to the extent that he's claiming that we should have done something because he is a member in our plan, that is protected by ERISA. You did what the plan obligated you to do. You paid the hospital for his emergency care. And that's why I believe that we have a complete defense on the merits to his claim against us. I'm just not sure it's an ERISA claim. That's the problem. I know we're going round and round. I guess the way I would describe it is this. The only way that he as a plan beneficiary can pursue a claim for benefits is under ERISA. Why can't he just make a demand on Blue Cross? You've converted the money that should have gone to me. Give it back to me. Because he'd be asking for benefits. No, he'd be asking for recovery of a money that he claims you took that belongs to him. That's called the conversion. Well, he hasn't pled any facts to indicate that we took his money. I know he hasn't pled it because I seem to be the only one who thinks this is a great theory. But I just don't see the federal jurisdiction here. Well, I mean, I think there's clearly federal jurisdiction to the extent that he is claiming. And I thought it was fairly clear from his reply brief where he says that we have his money and that the only reason we would have his money is because we got reimbursed by the hospital. So I think his claim is we have his money. We shouldn't have his money. That has to be a claim for benefits because otherwise he has no entitlement to any money. Let's pursue that. Let's say to the third level now. You have this defense, which you assert. But what is it in the language of the contract under which he is covered for benefits that provides this defense? You heard, well, you know your opponent's case. The claim is with respect to the violation of the state rule, which presumably is incorporated in any ERISA contract, is it not? We cannot bill and or direct the emergency room to collect from the patient. And I think that's his principal complaint. But suppose there's a statute in California that says that you have to. Then that statute. And you're in federal court under ERISA. What's your defense there? To the extent that he's seeking a claim for benefits under A1B, then he's got a claim for ERISA benefits and he must follow the policy requirements to exhaust his administrative remedies. Assume they're exhausted for this discussion. Assume they're exhausted. And so after exhausting his administrative remedies, we determine that we have paid the benefits. Then he's got to seek review. He's got what? He should seek review. He should bring his action. The court should look at the record and determine whether or not we followed what we were supposed to do under the plan. And here we did what we were supposed to do under the plan. We paid his benefits when he went to the emergency room. But he's alleging you paid them in violation of California state law. I think his claim is that we somehow got money from the hospital after the hospital got money from farmers. Is that what happened? But that's not against California law. The hospital certainly can, and it is in their interest. And in reality, this happens quite frequently. The hospital has a discounted rate with Blue Shield. So the hospital, if the hospital wants to make money and says, I can charge Blue Shield is going to pay me $0.70 on the dollar on this claim. This farmer is going to pay me $0.10 on the dollar. I'm going to get the money from farmers, and they're going to reimburse Blue Shield. And Blue Shield does not need to. $0.70 or $0.10. They're going to reimburse Blue Shield $0.70 on the dollar because that's what Blue Shield can maximally charge them. And the hospital is going to collect $0.10 on the dollar from farmers. Right, so the hospital then kept the other $0.30, right? The hospital might disagree that they're keeping the other $0.30, but in reality, they are charging someone for a higher rate. They billed at the rate, but you paid at the capitated rate, right? That's correct. So now we have two joint tort fees in my conversion theory. That's right. The hospital and farmers. And you ought to be in state court. And I perfectly concede that farmers and the hospital should be in state court, but our rights are prescribed by ERISA. I think the issue that he's claiming is somehow that we have a way of incentivizing the hospital to get the higher rate, but in reality, the hospital is going to do that. It is simple economics that if the hospital can charge someone $0.70 on the dollar or they can collect $0.10 on the dollar from farmers, we don't need to tell them to do that. They're going to do that because it's in their own economic interest. Well, taking his claim again in its most favorable light, it seems to me he's suggesting that under California law, there's a violation of the coordination of benefits prohibition that's going on here. And he wants to reach it through you. And I don't quite see why he can't do that if one assumes that California law is engrafted upon the Blue Shield contract. Well, he would still, and I think ultimately this gets to the decision that Judge Pragerson made, which was that ultimately he has to show some harm caused by the action that he's complaining about. I think his harm is to the public interest. And he's, of course, assuming his own harm in that he didn't get a double recovery. But again, I think that Judge Pragerson made clear initially that it was unclear whether or not he was ever able to be a beneficiary under the farmer's insurance policy in the first instance. And second – Well, he had to be because his benefits were paid. Well, I mean, the benefits that he paid – Insurance companies don't go around paying benefits they're not required to pay. The amount of the benefits was certainly something that went into a determination as to whether the insurance company should pay it. We should not be bound by their decision to pay that claim because of the amount. That was an issue. The policy provisions are not at all clear as to whether an authorized driver who's not a family member is covered under the policy. And I could think of a number of substantial reasons why a MedPay plan would not necessarily cover a driver, although it might otherwise cover an occupant who is a passenger. That's not an issue here. That's far over the dam. Farmers made that decision. They made the decision to pay. And the question is whether or not he's entitled to recover the benefits. He wants to recover under you, under your policy. And under our policy, he has to make a claim that he is entitled to get benefits that we did not pay for. We paid for the benefits that we were obligated to under the policy. We paid them to the hospital. The hospital reimbursed them. I don't think this has anything to do with your plan. I think it has everything to do with the fact that you received money that he said should have gone to him. Well, I don't know that we received money that he got. His insurance company perhaps should not have paid the hospital. But there is no contention that when we got reimbursement from the hospital that we should not be able to keep that reimbursement. I mean, we paid what we were supposed to pay under the plan. The hospital paid it back to us. That happens all the time. That's not an infrequent occurrence. This is a little bit off, but I get the feeling from reading the briefs that there's a potential class action here involving this practice, at least through California, maybe nationally. Can you shed any light on that at all? Is this, in fact, a typical practice or not? In terms of whether or not there are decisions made between the hospital and med pay provider to pay those claims, that happens fairly frequently. In terms of whether or not the med pay provider might make a claim against Blue Shield for reimbursement or they might have some splitting of fees on a pro rata basis, I'm not fully aware of that. His contention is that the med pay provider never seeks recovery of its out-of-pocket costs from a collateral source. I don't know if that is always the case. Well, isn't that the intent behind the state statute? Because if you had a coordination of benefits requirement, it would be more likely that there would be claims being made as between insurance companies over who has to ultimately pay on the claim and whether or not there's a right to be reimbursed under the coordination of benefits. The state statute is designed to protect consumers in the first instance when they are at the To make sure they're covered. To make sure that they're covered. But after they're covered, I don't believe that there's any prohibition that protects the that precludes the providers from attempting to work something out amongst themselves after the claim has been settled. And I think the issue here is that we don't want people who need emergency room services to not get those services while the insurance companies are fighting over them. And so that's why we have to pay, and that's why the state statute requires us to pay these things at the door. And that's what happened here. And that's all he was entitled to from Blue Shield's standpoint was to make certain that his claim was paid. His benefits were certainly paid. And if he wanted to recover from an additional source, he should bring a claim in state court against farmers and the hospital, but he can't bring a claim against Blue Shield because our rights are limited to what our obligations are under ERISA. Thank you, counsel. Mr. Ehrlich, you have some reserved time, and you better tell us about this exhaustion issue. Have you exhausted or not? We have not exhausted because it's not an ERISA claim. There's really nothing to exhaust because we're not seeking ERISA benefits. We're not saying you should have paid us more. Why are you in federal court? Because we were removed, Your Honor. Well, moved to remand for lack of jurisdiction. Well, in essence, when we fought the motion to dismiss and we argued the ERISA preemption issue, that's what we were doing. We were saying we didn't have an ERISA claim. If the court had focused on ERISA, it would have found there was no ERISA claim, then it would have had no jurisdiction. It would have had to remand. Would you be happy if we resolved this appeal by reversing and remanding to the district court with directions to remand the case to the superior court? Yes, as long as there isn't some limitation on the nature of the cause of action that we're allowed to pursue. Well, if we don't have jurisdiction, we're not going to propose to sell the trial court in Los Angeles. It may or may not resolve. We're not into dicta around here. I appreciate that, Your Honor, and that would be the result that we think is correct. It's not an ERISA claim. It's not a claim for ERISA benefits. In my remaining minute and ten seconds, I want to point out we were dismissed for lack of standing. I think it's interesting that the supposed lack of standing argument somehow vaporizes whenever the discussion turns to ERISA. No one says that if you're under ERISA, you don't have standing. It seems to me if we have standing under ERISA, then we have standing, and then the only fight is what kind of claim that you have. So it has to be error to dismiss us for lack of standing. So I needed to make that point. We don't have an ERISA claim for benefits for the reasons we said. I want to address the issue of the hospital is going to do this anyway. It's a balanced billing issue. In other words, counsel is telling you that the hospital wants to get paid at its retail rate. It's always going to try to get 100% of the dollar. Balanced billing would mean that the hospital gets the Blue Shield reimbursement at the $0.70, and then it tries to get the extra $0.30 from MedPay. That would be balanced billing, and the remaining 70% of the MedPay benefit then would be available to Mr. Gomez as the insured. What's happening here isn't balanced billing. Here, the hospital is simply making the MedPay primary, paying its bill out of MedPay, and then kicking back the money to Blue Shield. So the hospital does get 100%, but Blue Shield pays nothing. Under a balanced billing scenario, Blue Shield pays its contracted rate, and the hospital collects the unpaid balance from MedPay with the remainder available. The problem here, ultimately, is when you follow the money, is that the money goes into Blue Shield's pocket. We contend under state law it doesn't have a right to that money, and we should be allowed to address it in a class action under the unfair competition law, maybe under a claim for conversion. But we think we have standing to assert the claim, and we shouldn't have been dismissed without leave to amend. And I appreciate very much the accommodation you've shown me today. Well, thank you very much, counsel. The case just argued will be submitted for decision, and we will hear next Castro de Mercado v. Mukasey.
judges: Thompson, O'scannlain, Tallman